## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINA ALFREY and<br>JEFFREY FAY,<br>Individually and as Administrators<br>Of the Estate of L.A.F., deceased | : : : : : | |
| Plaintiffs, | : : | |
| vs. | : : : | MEDICAL<br>PROFESSIONAL<br>LIABILITY |
| | : | |
| | : | JURY TRIAL DEMANDED |
| KARI A. WHITLEY, M.D.,<br>LEHIGH VALLEY PHYSICIANS<br>GROUPS AFFILIATED WITH THE<br>LEHIGH VALLEY HEALTH NETWORK<br>t/a LVPG MATERNAL FETAL<br>MEDICINE-MONTAGE, LEHIGH<br>VALLEY HEALTH NETWORK, INC.,<br>UNITED STATES OF AMERICA and<br>WAYNE MEMORIAL HOSPITAL | : : : : : : : : : : | JUDGE<br><br>CIVIL: |

## COMPLAINT

The Plaintiffs, Christina Alfrey and Jeffrey Fay, by and through their counsel, Selingo Guagliardo, LLC, hereby complain of the Defendants as follows:

### PARTIES:

1.     The Plaintiff, Christina Alfrey, is an adult individual who currently resides at 105 Cherry Hill Circle, Hawley, Pennsylvania.

9

2.    The Plaintiff, Jeffrey Fay, is an adult individual who currently resides at 105 Cherry Hill Circle, Hawley, Pennsylvania.

3.    Plaintiffs Christina Alfrey and Jeffrey Fay were the natural parents of baby boy L.A.F. who was born December 6, 2019. L.A.F. died intestate on December 6, 2019. The Register of Wills of Pike County opened an estate for L.A.F. at Number 52-2--00166. Plaintiff, Christina Alfrey and Jeffrey Fay were appointed Administrators of the estate.

4.    Defendant, Kari A. Whitley, M.D., is a physician who at all times relevant to this cause of action, was duly licensed and was practicing medicine in the Commonwealth of Pennsylvania with an office located at 52 Glenmaura National Boulevard, Suite 103, Moosic, Lackawanna County, Pennsylvania. Plaintiffs are asserting a professional liability claim against this Defendant.

5.    At all times relevant to this cause of action, Defendant, Kari A. Whitley, M.D., held herself out to the public and to Plaintiffs as a competent and skilled health care provider possessing specialized skills in the field of maternal fetal medicine.

6.    Defendant, Lehigh Valley Physicians Groups Affiliated With The Lehigh Valley Health Network trading as LVPG Maternal Fetal Medicine-Montage (hereinafter "LVPG"), is a business entity which at all times relevant to this cause of action, had its office and place of business at,

52 Glenmaura National Boulevard, Suite 103 Moosic, Lackawanna County, Pennsylvania.  Plaintiffs are asserting a professional liability claim against this Defendant.

7.      At all times relevant to this cause of action, the Defendant, LVPG employed numerous physicians, including Defendant, Kari A. Whitley, M.D., and held itself out as, and acted as a provider of maternal fetal medicine services which assumed control over the total pregnancy care of its patients.

8.      Defendant, LVPG is neither a "licensed professional" as such term is defined by Pa. R.C.P. 1042.1 nor a "health care provider" as such term is defined by the Medical Care Availability and Reduction of Error ("MCARE") Act.

9.      Defendant, Lehigh Valley Health Network, Inc. is a business entity which at all times relevant to this cause of action, had its office and place of business at 1243 S. Cedar Crest Boulevard, Allentown, Pennsylvania.  Plaintiffs are asserting a professional liability claim against this Defendant.

10.     At all times relevant to this cause of action, the Defendant, Lehigh Valley Health Network, Inc. employed numerous physicians, including Defendant, Kari A. Whitley, M.D., and held itself out as, and acted

as a provider of medical services which assumed control over the total pregnancy care of its patients.

11.     Defendant, Lehigh Valley Health Network, Inc. is neither a "licensed professional" as such term is defined by Pa. R.C.P. 1042.1 nor a "health care provider" as such term is defined by the Medical Care Availability and Reduction of Error ("MCARE") Act.

12.     Eric Rittenhouse, M.D., is a physician who at all times relevant to this cause of action, was duly licensed and was practicing medicine in the Commonwealth of Pennsylvania with an office located at Wayne Memorial Hospital, Honesdale, Pennsylvania.  Plaintiffs are asserting a professional liability claim against this Defendant as an employee/agent of the United States of America ("United States"). *See, infra.*

13.     At all times relevant to this cause of action, Eric Rittenhouse, M.D. held himself out to the public and to Plaintiffs as a competent and skilled health care provider possessing specialized skills in the field of obstetrics.

14.     At all times relevant to this cause of action, Eric Rittenhouse, M.D. was employed by Wayne Memorial Community Health Centers ("WMCHC") which is an entity receiving funds from Defendant, United States under section 42 U.S.C. 254b. Eric Rittenhouse, M.D. was at all times acting within the scope and course of such employment.

15.     Pursuant to the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. 233 (g)-(n), Dr. Rittenhouse is deemed a federal employee of Defendant United States of America and is covered by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 1346(b), 2671-2680, which provides the exclusive remedy for state law tort actions brought against individuals or entities deemed to be federal employees acting within the scope of their employment. *Id.*

16.     Defendant, Wayne Memorial Hospital, is a business entity and/or health care provider which, at all times relevant to this cause of action, employed numerous medical, surgical, technical, administrative, supervisory and nursing personnel in Pennsylvania.  This Defendant operated a hospital located at 601 Park Street, Honesdale Pennsylvania. Plaintiffs are asserting a professional liability claim against this Defendant.

17.     At all times relevant to this cause of action, Defendant, Wayne Memorial Hospital, employed numerous medical personnel, and held itself out as and acted as a comprehensive health care provider which assumed control over the total obstetrical and newborn care of its patients.

18.     At all times relevant to this cause of action, Defendant, Wayne Memorial Hospital, held itself out to the public and to the Plaintiffs as a competent and skilled health care provider specializing in the provision of obstetrical, labor and delivery and newborn care, acting by and through its

agents, ostensible agents, servants, workers and/or employees, including Eric Rittenhouse, M.D.

19.    At all times relevant to this cause of action, Kari Whitley, M.D. was the agent, ostensible agent, servant, worker and/or employee of the Defendants, LVPG and/or Lehigh Valley Health Network, Inc. acting within the course and scope of said employment and/or agency and acting in the furtherance of the business purposes of said Defendants.

20.    At all times relevant to this cause of action, Eric Rittenhouse, M.D. was the agent, ostensible agent, servant, worker and/or employee of Defendants, United States and/or Wayne Memorial Hospital and was acting within the scope of said employment and/or agency and acting in the furtherance of the business purposes of said Defendants.

**JURISDICTION:**

21.    This action, brought pursuant to the FTCA, may only be brought in federal court. 28 U.S.C. 1346.

22.    Standard Form 95 was filed by Plaintiffs to initiate an administrative claim with The Department of Health & Human Services ("HHS") and Plaintiffs have exhausted their administrative remedy by HHS's denial of the claim in a letter dated July 26, 2021. Exhibit "1."

## CLAIMS:

23.    The Plaintiff, Christina Alfrey, was a 37 year-old Gravida 4 Para 1 obstetric patient of Eric Rittenhouse, M.D.  Her estimated date of confinement was March 29, 2020.  She presented to Eric Rittenhouse, M.D. for prenatal care during her pregnancy.

24.    Plaintiff's, Christina Alfrey's prenatal care was significant for a symptomatic large subchorionic hematoma.  She presented to Wayne Memorial Hospital emergency room on October 31, 2019 complaining of bleeding.  She was eventually referred to LVPG for co-management of the pregnancy.

25.    On November 7, 2019, Plaintiff, Christina Alfrey presented for her first visit at LVPG with William E. Scorza, M.D.  Following a history, examination, and evaluation of the subchorionic hematoma by Dr. Scorza, Plaintiff, Christina Alfrey made clear that she wanted to continue the pregnancy to a live birth.  Dr. Scorza noted, *inter alia* that if the pregnancy continued, Plaintiff, Christina Alfrey should be admitted to a tertiary care obstetric facility with a NICU at 24 weeks.  Admission could also be considered at 23 weeks.  Steroids could be administered at between 23 and 24 weeks.

26.    Plaintiff, Christina Alfrey returned to LVPG on December 5, 2019 at 23 weeks 4 days where she was seen and examined by Defendant,

Kari A. Whitley, M.D. The ultrasound was noted as being stable with normal growth. Vaginal bleeding was daily but reduced. Defendant, Kari A. Whitley, M.D. decided that due to improved vaginal bleeding and continued fetal growth and normal fluid, hospitalization, as previously contemplated during the 23rd week, was not warranted. Hospitalization would only be considered if complications arose. Bi-weekly ultrasounds were recommended.

27.    That same evening on December 5, 2019, Plaintiff, Christina Alfrey presented to Wayne Memorial Hospital emergency room complaining of lower abdominal and back pain with vaginal bleeding. She was initially evaluated shortly after midnight on December 6, 2019. Nurse Genell noted a small amount of bleeding. Clots and leaking were not found. A Fetal Heart Rate tracing was described as 152 and "strong" without decelerations. CNM Jones was called at 1:00 a.m. by Nurse Genell.

28.    Starting at 1:05 a.m., CNM Jones performed a speculum examination that revealed "blood pooled in vaginal canal" and the cervix was described as 2 cm dilated with 70% effacement and fetal presentation at -2 station. An order was given for intravenous fluids which were started at 1:53 a.m. Plaintiff, Christina Alfrey was described in the record as "crying out with c/o lower back and abdominal pain."

29.     At 1:25 a.m. CNM Jones is described in the records as speaking with Eric Rittenhouse, M.D. by telephone. At 1:30 a.m. drawn blood was sent to the lab.  It was stated in the admission note that Plaintiff, Christina Alfrey was contracting every 3-5 minutes and was cephalic.

30.     Eric Rittenhouse, M.D. spoke to Plaintiff, Christina Alfrey at 1:45 a.m. regarding the plan to transfer her care. He ordered magnesium sulfate which was started at 1:54 a.m. with a 4 gram bolus and then infused at 3 grams per hour starting at 2:10 a.m. Admission labs were reported as a low hematocrit with normal Creatinine and liver function tests. Urine toxicology screen was negative.

31.     Eric Rittenhouse, M.D. signed a transfer order attesting to the medical benefits expected from the transfer to another facility which outweighed the benefits of continued care at Wayne Memorial Hospital. The transfer diagnosis was listed as preterm labor and bleeding with the reason for transfer listed as "NICU availability."  The accepting physician at Lehigh Valley Hospital Cedar Crest was Orion Rust, M.D.

32.     The request for the transfer ambulance was made for "non-emergent" transfer without lights or sirens.  Helicopter transfer was not requested.  Emergent ground transfer was not requested.  Specialized ambulance/crew for transfer was not requested.

33.     RN Yelekel completed a transfer checklist that noted a foley catheter.  Medications were those listed in the above paragraphs and 2 grams IV bolus of Ancef at 2:15 a.m., Stadol IV at 1:59 a.m. and Betamethasone 12 mg IM at 2:02 a.m.  The transfer timeout was completed at 2:30 a.m.  and Plaintiff, Christina Alfrey was transferred at 2:35 a.m. with departure by ambulance at 2:45 a.m.  Plaintiff, Christina Alfrey spent nearly three hours at Wayne Memorial Hospital with only one examination of her cervix being recorded, which was the initial examination.

34.     Cottage Hose Ambulance was dispatched to Wayne Memorial Hospital for the transfer of Plaintiff, Christina Alfrey at 2:02 a.m.  The crew arrived for transfer at 2:22 a.m.  According to the ambulance record, the ambulance and crew departed Wayne Memorial Hospital with Plaintiff, Christina Alfrey at 2:58 a.m.  An obstetrical staff member from Wayne Memorial Hospital did not accompany Plaintiff, Christina Alfrey in the ambulance.  She was transported by the ambulance driver and a single EMT.

35.     The ambulance proceeded as a non-emergent transfer, as requested, without lights and sirens, embarking on a two-hour road trip to Lehigh Valley Hospital Cedar Crest.

36.     While in route, Plaintiff, Christina Alfrey reported that she felt as if the baby "was coming."  Vaginal examination noted that the baby was crowning.  Shortly thereafter, L.A.F. was delivered in the back of the

moving ambulance by the EMT at 4:09 a.m. with the umbilical cord clamped and cut.  The birth occurred approximately an hour and ten minutes after departure from Wayne Memorial Hospital and approximately one hour from arrival at Lehigh Valley Hospital Cedar Crest (the approximate half way point of the trip). The EMT noted the initial APGAR score as 7.  The mouth and nose were suctioned and the baby was wrapped in foil for heat.  Plaintiff, Christina Alfrey then held L.A.F. Because an ambulance was not requested by Defendants with proper equipment and a specialized crew was not requested by Defendants, only blow-by oxygen was supplied to L.A.F. through a mask that did not fit his tiny face.

37.     The placenta was delivered at 4:30 a.m.  As of that time, the transport was upgraded to emergent with the ambulance attempting to divert to a closer facility, St. Luke's Lehighton.  However, they were refused at that facility.  The ambulance crew reported the status of baby and mother via cell phone to Lehigh Valley Hospital Cedar Crest.  The ambulance arrived at Lehigh Valley Hospital Cedar Crest at 4:46 a.m. with transfer of care at 4:50 a.m.

38.     Ophira Silbert, M.D. was the NICU attending at Lehigh Valley Hospital Cedar Crest.  She assessed L.A.F. after he was placed on a radiant warmer.  She noted that L.A.F. had passed prior to arrival.  Her examination noted that L.A.F. was an extremely preterm male with no spontaneous

movement, no tone and no heart rate. Assessment did not reveal any anomalies. L.A.F. weighed 534 grams.

39.    RN Allen described Plaintiff, Christina Alfrey as upset upon learning of the loss of L.A.F. Plaintiff, Jeffrey Fay was at the bedside. Emotional support was given.

40.    Placental pathology revealed a weight in the 95th percentile, subchorionic hemorrhage, acute chorioamnionitis, meconium staining, accelerated maturation for gestational age.

## COUNT I – NEGLIGENCE/SURVIVAL

### PLAINTIFFS
### v.
### KARI A. WHITLEY, M.D.

41.    Plaintiffs hereby incorporate by reference all of the allegations above as though fully set forth at length herein.

42.    The negligent and careless conduct of Defendant Kari A. Whitley, M.D. consisted of the following:

(a)    failing to follow the written plan put in place by William E. Scorza, M.D. on November 7, 2019 given that Plaintiff, Christina Alfrey continued to suffer bleeding at the time of her presentation to Defendant on December 5, 2019;

(b)      failing to follow the written plan put in place by William E. Scorza, M.D. on November 7, 2019 given that Plaintiff, Christina Alfrey expressed a desire to invoke all possible interventions to maximize the chance of her fetus's survival;

(c)      failing to recommend hospitalization as per the written plan of November 7, 2019, despite the fact that it is a known risk that a patient with Plaintiff's, Christina Alfrey's diagnosis experiencing a superimposed acute event would require immediate delivery;

(d)      failing to recognize that preterm labor triggered by an abruption is immediate and can be associated with bleeding and DIC;

(e)      failing to admit Plaintiff, Christina Alfrey to an appropriate hospital so that the labor event that occurred within 24 hours of her December 5, 2019 visit to Defendant occurred in a hospital with resuscitation by an appropriate NICU team available; and,

(f)      failing to allow Plaintiff, Christina Alfrey the opportunity to share in the decision concerning the care of her fetus by unilaterally advising her on December 5, 2019 that hospitalization was not warranted, thus denying her the opportunity to meet with the NICU team to discuss options.

43.    The above conduct caused a denial of therapeutic measures, including resuscitation options which effectively terminated L.A.F.'s chance for survival and increased the risk of harm that L.A.F. would not have life-saving services available to him at the time they were necessary.

44.    As a direct result of the aforesaid conduct, L.A.F. suffered pain and shortened life span that otherwise would not have occurred.

45.    As a direct result of the aforesaid conduct of Defendant, Kari A. Whitley, M.D., L.A.F. never experienced life's pleasures to his great detriment.

46.    As a direct result of the aforesaid conduct of Defendant, Kari A. Whitley, M.D., L.A.F. incurred expenses for medical treatment.

47.    As a direct of the aforesaid conduct of Defendant, Kari A. Whitley, M.D., L.A.F. incurred a loss of earning capacity.

Wherefore, Plaintiffs demand judgment against Defendant, Kari A. Whitley, M.D., for all monetary damages allowed by law, together with costs, interest, and attorneys' fees.

## COUNT II – VICARIOUS LIABILITY/SURVIVAL

## PLAINTIFFS
### v.
## LEHIGH VALLEY PHYSICIANS GROUPS AFFILIATED WITH THE LEHIGH VALLEY HEALTH NETWORK t/a LVPG MATERNAL FETAL MEDICINE-MONTAGE and LEHIGH VALLEY HEALTH NETWORK, INC.

48.    Plaintiffs hereby incorporate by reference all of the allegations above as though fully set forth at length herein.

49.    At all times relevant hereto, Defendant, Kari A. Whitley, M.D. was the agent, ostensible agent, servant, workman and/or employee of Defendants, LVPG and/or Lehigh Valley Health Network, Inc.

50.    Defendants, LVPG and/or Lehigh Valley Health Network, Inc. are vicariously liable for the conduct of Defendant, Kari A. Whitley, M.D.

51.    The conduct of Defendant, Kari A. Whitley, M.D. as set forth in Count I of this Complaint caused a delay in employing life saving measures, including proper resuscitation efforts which effectively terminated L.A.F.'s chance for survival and increased the risk of harm that death would occur.

52.    As a direct result of the aforesaid conduct, L.A.F. suffered pain and a shortened life span that otherwise would not have occurred.

53.     As a direct result of the aforesaid conduct of Defendant, Kari A. Whitley, M.D., L.A.F. never experienced life's pleasures to his great detriment.

54.     As a direct result of the aforesaid conduct of Defendant, Kari Whitley, M.D., L.A.F. has incurred expenses for medical treatment.

55.     As a direct of the aforesaid conduct of Defendant, Kari A. Whitley, M.D., L.A.F. incurred a loss of earning capacity.

Wherefore, Plaintiffs demand judgment against Defendants, Lehigh Valley Physicians Groups Affiliated with the Lehigh Valley Health Network t/a LVPG Maternal Fetal Medicine- Montage and Lehigh Valley health Network Inc. for all monetary damages allowed by law, together with costs, interest, and attorneys' fees.

## COUNT III – NEGLIGENCE/SURVIVAL

## PLAINTIFFS
### v.
## UNITED STATES OF AMERICA

56.     Plaintiffs hereby incorporate by reference all of the allegations above as though fully set forth at length herein.

57.     The negligent and careless conduct of Eric Rittenhouse, M.D. as an employee/agent of Defendant, United States of America consisted of the following:

(a)     failing to ensure that Plaintiff, Christina Alfrey was stable for transfer with her undelivered fetus;

(b)     failing to provide appropriate transport services when the goal of the transfer was to provide the highest level of care to L.A.F. once born;

(c)     failing to ensure that the assigned ambulance for transport was equipped with the ability to perform neonatal resuscitation so as to provide an appropriate level of care to an infant at 23 weeks 5 days;

(d)     failing to perform sufficient and timely examinations of Plaintiff, Christina Alfrey to determine her active preterm labor status, following the initial examination at Wayne Memorial Hospital, that would have better informed him of whether there would be an imminent birth, or at least a birth during the course of the two-hour ambulance transport;

(e)     failing to properly formulate a treatment plan, specifically by improperly recommending ground transport on a non-emergent basis rather than by properly and timely assessing the status of the preterm active labor while weighing the benefit of having the premature

birth at Wayne Memorial Hospital rather than during transport in an ambulance that was insufficiently equipped to care for a premature infant;

(f)     failing to properly and timely assess whether Plaintiff, Christina Alfrey was stable, whether the fetus was stable and the chance that the baby would deliver while in route, all prior to ordering transfer;

(g)     failing to understand that due to the gestational age of 23 weeks and 5 days, the small size of the baby would result in a very short time frame for delivery, once active labor began;

(h)     failing to consider or contact other, closer hospital options for transfer;

(i)     failing to consider and send necessary resuscitation equipment and personnel in the ambulance;

(j)     failing to consider and then order emergency transport with lights and sirens;

(k)     failing to consider and then order helicopter transport;

(l)     failing to consider the unacceptable risk of transfer given the high risk of imminent delivery;

(m)     failing to recognize that imminent delivery is a contraindication to transfer; and,

(n)     failing to complete the labor/birth at Wayne Memorial Hospital, stabilize L.A.F. and then transfer L.A.F. to a facility with a NICU.

58.     The above conduct caused a denial of therapeutic measures, including resuscitation options which effectively terminated L.A.F.'s chance for survival and increased the risk of harm that L.A.F. would not have life-saving services available to him at the time they were necessary.

59.     As a direct result of the aforesaid conduct, L.A.F. suffered pain and a shortened life span that otherwise would not have occurred.

60.     As a direct result of the aforesaid conduct of Defendant's, United States of America's employee/agent, Eric Rittenhouse, M.D., L.A.F. never experienced life's pleasures to his great detriment.

61.     As a direct result of the aforesaid conduct of Defendant's, United States of America's employee/agent, Eric Rittenhouse, M.D., L.A.F. incurred expenses for medical treatment.

62.     As a direct of the aforesaid conduct of Defendant's, United States of America's employee/agent, Eric Rittenhouse, M.D., L.A.F. incurred a loss of earning capacity.

Wherefore, Plaintiffs demand judgment against Defendant, United States of America, for all monetary damages allowed by law, together with costs, interest, and attorneys' fees.

## COUNT IV – VICARIOUS LIABILITY/SURVIVAL

### PLAINTIFFS
### v.
### WAYNE MEMORIAL HOSPITAL

63.    Plaintiffs hereby incorporate by reference all of the allegations above as though fully set forth at length herein.

64.    At all times relevant hereto, Eric Rittenhouse, M.D. was the agent, ostensible agent, servant, workman and/or employee of Defendant, Wayne Memorial Hospital.

65.    Defendant, Wayne Memorial Hospital is vicariously liable for the conduct of Eric Rittenhouse, M.D.

66.    The conduct of Eric Rittenhouse, M.D. as set forth in Count III of this Complaint caused a delay in employing life saving measures, including proper resuscitation efforts which effectively terminated L.A.F.'s chance for survival and increased the risk of harm that death would occur.

67.    As a direct result of the aforesaid conduct, L.A.F. suffered pain and a shortened life span that otherwise would not have occurred.

68.     As a direct result of the aforesaid conduct of Eric Rittenhouse, M.D., L.A.F. never experienced life's pleasures to his great detriment.

69.     As a direct result of the aforesaid conduct of Eric Rittenhouse, M.D., L.A.F. has incurred expenses for medical treatment.

70.     As a direct of the aforesaid conduct of Eric Rittenhouse, M.D., L.A.F. incurred a loss of earning capacity.

Wherefore, Plaintiffs demand judgment against Defendant, Wayne Memorial Hospital for all monetary damages allowed by law, together with costs, interest, and attorneys' fees.

## COUNT V – NEGLIGENCE PER SE/SURVIVAL
## PLAINTIFFS
### v.
## WAYNE MEMORIAL HOSPITAL

71.     Plaintiffs hereby incorporate by reference all of the allegations above as though fully set forth at length herein.

72.     The 1986 Emergency Medical Treatment and Active Labor Act ("EMPTALA") 42 U.S.C. 1395 governs hospitals regarding the emergency transfer of patients.  Defendant, Wayne Memorial Hospital is subject to EMPTALA's mandates.

73.     According to the regulations contained at 42 CFR 49.24, 489.20 (l), (m), (q) and (r), hospital staff must determine if an "emergency medical condition" exists that prevents the transfer of a patient to another facility for treatment.

74.     Specifically, relative to a woman experiencing contractions, EMPTALA's regulations define "emergency medical condition" as 1) inadequate time to effectuate a safe transfer to another hospital **before** delivery or 2) that transfer **may pose a threat** to the health and safety of the **woman or child**.  Both applied to the situation on December 6, 2019 when Plaintiff, Christina Alfrey was under the care of Defendant, Wayne Memorial Hospital.

75.     Once it is determined that an "emergency medical condition" exists, it is the transferring hospital's responsibility to perform an adequate medical examination and then provide associated treatment to stabilize the patient.  The transferring hospital is not authorized to transfer the patient until the patient is medically stable.  If transfer occurs in violation of these requirements, a civil cause of action is provided for under EMPTALA.

76.     Defendant Wayne Memorial Hospital, through its agents, ostensible agents, servants and employees, as listed in paragraphs 27-33, violated the EMPTALA statute resulting in its negligence *per se*, as follows:

(a)     failing to adequately, timely and appropriately perform examinations on Plaintiff's cervix after the initial examination to determine the status of the labor and imminent nature of birth prior to transfer;

(b)     failing to determine that an emergency medical condition existed in that the imminent birth created inadequate time to effectuate a safe transfer to another hospital;

(c)     failing to determine that an emergency medical condition existed in that the transfer posed a threat to the health and safety of both the Plaintiff, Christina Alfrey and her fetus;

(d)     failing to delay transfer to a hospital with a NICU until after the baby was delivered and stabilized;

(e)     failing to advise the hospital to which the transfer was proposed about the imminent birth;

(f)     failing to take into account that based on Plaintiff's, Christina Alfrey's history, there was a high probability of known complications from severe abruption, such as post-partum hemorrhage and/or disseminated intravascular coagulopathy ("DIC"); and,

(g)     failing to take into account that the infant had a better chance of

31

survival if born at a hospital without a NICU, then stabilized and transferred to a hospital with a NICU, than if the baby was born in an ambulance while in route to a hospital with a NICU.

77.     The conduct of Defendant's, Wayne Memorial Hospital's representatives, as set forth in the paragraphs of this Amended Complaint caused a delay in employing life saving measures, including proper resuscitation efforts which effectively terminated L.A.F.'s chance for survival and increased the risk of harm that death would occur.

78.     As a direct result of the aforesaid conduct, L.A.F. suffered pain and a shortened life span that otherwise would not have occurred.

79.     As a direct result of the aforesaid conduct as set forth above, L.A.F. never experienced life's pleasures to his great detriment.

80.     As a direct result of the aforesaid conduct as set forth above, L.A.F. has incurred expenses for medical treatment.

81.     As a direct of the aforesaid conduct as set forth above, L.A.F. incurred a loss of earning capacity.

Wherefore, Plaintiffs demand judgment against Defendant, Wayne Memorial Hospital for all monetary damages allowed by law, together with costs, interest, and attorneys' fees.

## COUNT VI- WRONGFUL DEATH

### PLAINTIFFS
### v.
### DEFENDANTS

82.    Plaintiffs hereby incorporate by reference all of the allegations above as through fully set forth at length herein.

83.    L.A.F. is survived by his parents, Plaintiff, Christina Alfrey, and Plaintiff, Jeffrey Fay, both residing at the address listed above and both being the intestate heirs of his estate.

84.    Plaintiffs have the right to bring this action as the Administrators of the Estate of L.A.F. and the action is brought on behalf of the deceased's heirs, Plaintiff, Christina Alfrey, and Plaintiff, Jeffrey Fay.

85.    L.A.F. passed away on December 6, 2019 as a direct result of the negligence of Defendants, as set forth above.

86.    Plaintiffs as Administrators of the Estate claim damages from Defendants for their actions pursuant to Pa.C.S. §8301, which include the following:

(a)    Hospital, medical, funeral, burial and estate administration expenses;

(b)    All sums that L.A.F. would have earned and contributed to the support of his family from the date of his death to the end of his normal life expectancy; and,

33

(c)   Loss of society and companionship according to the law of Pennsylvania.

WHEREFORE, Plaintiffs, individually and on behalf of Estate of L.A.F., demand judgment against Defendants for all monetary damages allowed by law, together with costs, interest, and attorneys' fees.

## COUNT VII- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

## CHRISTINA ALFREY, Individually
## v.
## DEFENDANTS

87.   Plaintiffs hereby incorporate by reference all of the allegations above as through fully set forth at length herein.

88.   As a result of the observations of Plaintiff, Christina Alfrey, during and after the birth of L.A.F., Plaintiff, Christina Alfrey sustained severe emotional distress.  Plaintiff, Christina Alfrey was caused to suffer severe fear, anxiety and emotional distress which has manifested itself, psychologically, emotionally and physically and is expected to continue permanently in the future.

89.   Plaintiff's, Christina Alfrey's severe fear, anxiety and emotional distress were the direct and proximate result of the negligence of Defendants as herein above set forth.  The emotional distress resulted from

the negligent actions of Defendants. *Toney v. Chester County Hosp.*, 36 A.3d 83 (Pa. 2011) (contractual/fiduciary duty).[1]

90.    As a result of the aforesaid incident, Plaintiff, Christina Alfrey sustained injuries including, but not limited to, shortness of breath, chest pain, stomach upset, loss of sleep, headaches and was made to undergo great physical pain and mental anguish as a result of which she will suffer, yet suffers and may continue to suffer for an indefinite time in the future.

91.    As a further result of the aforesaid incident, Plaintiff, Christina Alfrey has been obliged to expend and/or incur large sums of money for medicines and medical attention in and about endeavoring to treat and cure said injuries and may be compelled to expend and/or incur additional sums for the same purposes for an indefinite time in the future for which Plaintiff, Christina Alfrey seeks compensation as economic losses.

92.    As a further result of the aforesaid incident, Plaintiff, Christina Alfrey has suffered or may suffer a severe loss because of expenses which have been or may be reasonably incurred in obtaining ordinary necessary

---

[1] The Pennsylvania Supreme Court concluded that duty in NIED claims include classes of pre-existing relationships involving obviously and objectively deep emotional harm in the event of breach. *Toney, supra.*

> That some relationships, including some doctor-patient relationships, will involve an implied duty to care for the plaintiff's emotional well-being that, if breached, has the potential to cause emotional distress resulting in physical harm.  In this case, ***involving the very sensitive and emotionally charged field of obstetrics, we conclude that Defendants have such an implied duty to care for Plaintiff's  emotional well-being***.

*Id.* (emphasis added)

services in lieu of those which Plaintiff, Christina Alfrey would have performed, not for income, but for the benefit of herself if not injured.

93.    As a further result of the aforesaid incident, Plaintiff, Christina Alfrey has suffered a physical and/or mental impairment, which has prevented her from performing all or substantially all of the material acts and duties of her customary and usually daily activities, and has resulted in a loss of life's pleasure.

94.    As a further result of the aforesaid incident, Plaintiff, Christina Alfrey has suffered lost wages and/or a loss of earning capacity into the future on a continuing basis.

95.    As a further result of the aforesaid incident, Plaintiff, Christina Alfrey has suffered emotional distress, which will continue into the future.

WHEREFORE, Plaintiff, Christina Alfrey demands judgment against Defendants for all monetary damages allowed by law, together with costs, interest, and attorneys' fees.

## COUNT VIII- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### JEFFREY FAY, individually
### v.
### DEFENDANTS

96.    Plaintiffs hereby incorporate by reference all of the allegations above as through fully set forth at length herein.

97.   As a result of the observations of Plaintiff, Jeffrey Fay, after the birth of L.A.F., Plaintiff, Jeffrey Fay sustained severe emotional distress when he was present at the time L.A.F. was pronounced dead.  Plaintiff, Jeffrey Fay was caused to suffer severe fear, anxiety and emotional distress which has manifested itself, psychologically, emotionally and physically and is expected to continue permanently in the future.

98.   Plaintiff's, Jeffrey Fay's severe fear, anxiety and emotional distress were the direct and proximate result of the negligence of Defendants as herein above set forth.  The emotional distress resulted from the negligent actions of Defendants. *Toney v. Chester County Hosp.*, 36 A.3d 83 (Pa. 2011)(fiduciary duty)(*see* footnote 1).

99.   As a result of the aforesaid incident, Plaintiff, Jeffrey Fay sustained injuries including, but not limited to, shortness of breath, chest pain, stomach upset, loss of sleep, headaches and was made to undergo great physical pain and mental anguish as a result of which she will suffer, yet suffers and may continue to suffer for an indefinite time in the future.

100.   As a further result of the aforesaid incident, Plaintiff, Jeffrey Fay has been obliged to expend and/or incur large sums of money for medicines and medical attention in and about endeavoring to treat and cure said injuries and may be compelled to expend and/or incur additional sums

for the same purposes for an indefinite time in the future for which Plaintiff, Jeffrey Fay seeks compensation as economic losses.

101.   As a further result of the aforesaid incident, Plaintiff, Jeffrey Fay has suffered or may suffer a severe loss because of expenses which have been or may be reasonably incurred in obtaining ordinary necessary services in lieu of those which Plaintiff, Jeffrey Fay would have performed, not for income, but for the benefit of himself is he had not been injured.

102.   As a further result of the aforesaid incident, Plaintiff, Jeffrey Fay has suffered a physical and/or mental impairment, which has prevented him from performing all or substantially all of the material acts and duties of his customary and usually daily activities, and has resulted in a loss of life's pleasure.

103.   As a further result of the aforesaid incident, Plaintiff, Jeffrey Fay has suffered lost wages and/or a loss of earning capacity into the future on a continuing basis.

104.   As a further result of the aforesaid incident, Plaintiff, Jeffrey Fay has suffered emotional distress, which will continue into the future.

WHEREFORE, Plaintiff, Jeffrey Fay demands judgment against Defendants for all monetary damages allowed by law, together with costs, interest, and attorneys' fees.

Respectfully submitted,

SELINGO GUAGLIARDO, L.L.C.

By:    *David J. Selingo /s/*
David J. Selingo, Esq.
Attorney for Plaintiffs
345 Market Street
Kingston, PA 18704
(570) 287-2400
Attorney I.D. No. 66368