## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA ALFREY and JEFFREY FAY, Individually and as Administrator of the Estate of L.A.F., deceased, | CIVIL ACTION NO. 3:21-cv-01629 |
| Plaintiffs, | (SAPORITO, M.J.) |
| v. | |
| KARI A. WHITLEY, M.D., et al., | |
| Defendants. | |

## <u>MEMORANDUM</u>

Before the court is the plaintiffs' motion to disqualify counsel for defendants Kari A. Whitley, M.D., Lehigh Valley Physicians Groups Affiliated with the Lehigh Valley Health Network t/a LVPG Fetal Medicine-Montage, and Lehigh Valley Health Network, Inc. ("LVPG"), and to prevent counsel from meeting with three non-party physicians employed by LVPG, preparing them for their depositions, and representing them at their depositions. (Doc. 43).

For the reasons set forth herein, the motion will be denied; however, we will set down appropriate safeguards.

## I.    Statement of Facts[1]

The plaintiffs have alleged that Christina Alfrey was a thirty-seven-year-old Gravida 4 Para 1 obstetric patient of Eric Rittenhouse, M.D., a physician employed by defendant Wayne Memorial Community Health Centers, which is located at Wayne Memorial Hospital and funded by the United States.

Ms. Alfrey presented to Wayne Memorial Hospital emergency room on October 31, 2019, complaining of bleeding.  She was eventually referred to LVPG for co-management of her pregnancy.  Ms. Alfrey was under the prenatal care at LVPG commencing on November 7, 2019.  She met with a non-party physician, William E. Scorza, M.D., her treating physician, at LVPG.  At the time of her care, Ms. Alfrey was diagnosed with a symptomatic large subchorionic hematoma.  Her estimated date of delivery was March 29, 2020.  At that time, Ms. Alfrey expressed her preference that she wanted to continue the pregnancy to a live birth.  Dr. Scorza noted that if the pregnancy continued, Ms. Alfrey should be admitted to a tertiary care obstetric facility with a NICU at twenty-four weeks.  He also suggested that hospital admission could also be

---

[1]    The facts are derived from the amended complaint.  (Doc. 24).

considered at twenty-three weeks. Steroids could be administered at twenty-three weeks or between twenty-three and twenty-four weeks.

On December 5, 2019, at twenty-three weeks, four days into her pregnancy, Ms. Alfrey returned to the Lehigh Valley defendants, and she was seen and examined by the defendant, Kari A. Whitley, M.D., an LVPG physician.  An ultrasound was performed, and it was noted that Ms. Alfrey's condition was stable with normal growth; vaginal bleeding was daily but reduced.   Because Ms. Alfrey's vaginal bleeding had improved and fetal growth continued with normal fluid, Dr. Whitley decided not to hospitalize Ms. Alfrey as previously contemplated by Dr. Scorza.  Later that evening, on December 5, 2019, Ms. Alfrey presented to Wayne Memorial Hospital emergency room complaining of lower abdominal and back pain with vaginal bleeding.  Her evaluation occurred shortly after midnight and a nurse noted a small amount of bleeding, no clotting or leaking, and a fetal heart rate tracing was described as 152 and "strong" without decelerations.  However, at 1:05 a.m. on December 6, 2019, a speculum examination revealed "blood pooled in vaginal canal" and the cervix was described as 2 cm dilated with 70% effacement and fetal presentation at -2 station.  The amended complaint alleges that Ms.

Alfrey was described as "crying out with c/o lower back and abdominal pain." At 1:30 a.m. blood was drawn and sent to the lab. Ms. Alfrey was contracting every 3 to 5 minutes, and she was cephalic.

At 1:45 a.m., defendant, Dr. Eric Rittenhouse, an employee of defendant, Wayne Memorial Community Health Centers, spoke to Ms. Alfrey regarding the plan to transfer her care to LVPG. Thereafter, Dr. Rittenhouse signed a transfer order attesting to the medical benefits expected from the transfer to another facility which outweighed the benefits of continued care at Wayne Memorial Hospital. The transfer diagnosis was listed as pre-term labor and bleeding and the reason for transfer was listed as "NICU availability." Despite these circumstances, the request for ambulance transfer to the Lehigh Valley Hospital Cedar Crest—a two- hour ride—was made for a "non-emergent" transfer without lights or sirens. Helicopter transfer, emergent ground transfer, and specialized ambulance crew for transfer were not requested. At 2:58 a.m., the ambulance departed the Wayne Memorial Hospital. Ms. Alfrey was transported by the ambulance driver and one EMT.

While in route to the Lehigh Valley Hospital, Ms. Alfrey reported that she felt the baby "was coming." Upon vaginal examination, it was

noted that the baby was crowning.   Shortly thereafter, L.A.F. was delivered in the back of the moving ambulance by the EMT at 4:09 a.m.—an hour and ten minutes after departure from the Wayne Memorial Hospital and approximately one hour from arrival at Lehigh Valley Hospital Cedar Crest.

Upon delivery of L.A.F., the EMT noted the initial APGAR score was 7.   The mouth and nose were suctioned, and Ms. Alfrey held L.A.F. in wrapped foil for heat.   L.A.F. was oxygenated through a blow-by oxygen mask that did not fit his face.   Ms. Alfrey delivered the placenta at 4:30 a.m.

Despite upgrading the transport to emergent at approximately 4:30 a.m., the ambulance was unable to divert to St. Luke's Lehighton, a closer facility, as admission there was refused.   The ambulance arrived at Lehigh Valley Cedar Crest at 4:46 a.m.   The attending physician in the NICU assessed L.A.F. after he was placed on a radiant warmer.   She determined that L.A.F. died prior to arrival as there was no spontaneous movement, no tone, and no heart rate.   Her examination also noted that L.A.F. was an extremely preterm male who weighed 534 grams.

Discovery has been in progress. According to the motion, sometime after November 29, 2022, plaintiffs' counsel learned that counsel for Dr. Whitley and LVPG intended to meet with three LVPG non-party physicians, namely, Dr. Scorza, Meredith Rochon, M.D., an undisputed treating physician, and Orion Rust, M.D., the accepting physician at Lehigh Valley Hospital Cedar Crest, to prepare them for their upcoming scheduled depositions in late January 2023. (Doc. 43 ¶3). The three proposed deponents are LVPG employees, and they were treating physicians of plaintiff, Christina Alfrey. (*Id.*). The plaintiffs have made no claims of malpractice against the three deponents. (*Id.* ¶6). The plaintiffs' claims against defendant LVPG are vicarious in nature and arise from the alleged conduct of defendant, Dr. Whitley. For relief, the plaintiffs ask the court to prevent counsel for Dr. Whitley and LVPG from: (1) having ex parte meetings and communications with the deponents; (2) preparing the deponents for the depositions; and (3) representing the deponents during their respective depositions. (*Id.* ¶8).

The parties have briefed the motion (Doc. 44; Doc. 45), and the court conducted an on the record argument with counsel on January 20, 2023. The motion is ripe for disposition.

## II.   *Legal Standards*

The party seeking the disqualification of counsel bears the burden of proof on a motion to disqualify and must demonstrate that "continuing representation would be impermissible." *Shade v. Great Lakes Dredge & Dock Co.,* 72 F. Supp.2d 518, 520 (E.D.Pa.1999) A motion to disqualify counsel requires the court to balance the right of a party to retain counsel of his choice and the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system. *Powell v. Alabama,* 287 U.S. 45, 53 (1932).  The underlying principle in considering motions to disqualify counsel is safeguarding the integrity of the court proceedings; the purpose of granting such motions is to eliminate the threat that the litigation will be tainted. *United States Football League v. National Football League,* 605 F. Supp. 1448, 1464 (S.D.N.Y. 1985). The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it.  *Richardson v. Hamilton Intern. Corp.,* 469 F.2d 1382, 1385–86 (3d Cir.1972), *cert denied* 411 U.S. 986.

Disqualification issues must be decided on a case-by-case basis and the party seeking disqualification of opposing counsel bears the burden of clearly showing that the continued representation would be impermissible. *Cohen v. Oasin,* 844 F. Supp. 1065, 1067 (E.D. Pa. 1994) *citing Commercial Credit Bus. Loans, Inc. v. Martin,* 590 F. Supp. 328, 335–36 (E.D. Pa. 1984). Courts are required to "preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility." *McCarthy v. Southeastern Pennsylvania Transportation Authority,* 772 A.2d 987 (Pa. Super. 2001). This balance is essential if the public's trust in the integrity of the Bar is to be preserved. *Id.*

## III.   *Discussion*

The claims against the LVPG defendants are state law claims before us under our exercise of supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a).   The parties agree that the substantive law of Pennsylvania controls and that Pa. R.C.P. 4003.6 applies.   Despite counsel's belief that Rule 4003.6 applies, there is federal case law that found this rule inapplicable in federal court, as it is procedural only.  *See*

*Perry v. Novartis Pharm. Corp.*, Civil Action No. 05-5350, 2007 WL 9628240 at *2 (E.D. Pa. Sept. 20, 2007); *McLaughlin v. Bayer Essure, Inc.*, Civil Action No. 14-7315, 2020 WL 2896681 at *3 (E.D. Pa. Apr. 13, 2020).   Nonetheless, even if we analyze the issue before us under Pa. R.C.P. 4003.6,[2] an exception to the rule explicitly permits defense counsel to have ex parte communications with treating physicians who are employees of defense counsel's client.   Rule 4003.6 is set out as follows:

> Information may be obtained from the treating physician of a party only upon written consent of that party or through a method of discovery authorized by this chapter. This rule shall not prevent an attorney from obtaining information[3] from
>
> (1)   the attorney's client,
> (2)   an employee of the attorney's client, or
> (3)   an ostensible employee of the attorney's client.

---

[2]   When promulgated, this rule appears to have been derived from a line of state court decisions addressing ex parte contact with treating physicians. S*ee Manion v. N.P.W. Med. Ctr.*, 676 F. Supp. 585 (M.D. Pa. 1987) (prohibiting ex parte contact with another party's treating physicians). *But see MacDonald v. United States*, 767 F. Supp. 1295, 1300 (M.D. Pa. 1991) ("this court, with all due respect, rejects the notion of a public policy in Pennsylvania prohibiting ex parte contact with treating physicians, as set forth in *Manion*.").

[3]   We note that neither the rule nor case law has interpreted or defined what constitutes "information."

Initially, we point out that it is undisputed that at no time has defense counsel had any unauthorized ex parte communications with the three proposed deponents.[4]  Further, plaintiffs' counsel has not granted consent for defense counsel to obtain information from the treating physicians.  As recently observed by the Superior Court of Pennsylvania, Rule 4003.6 carves out three exceptions applicable in circumstances where counsel *must* be permitted to confer privately with his own client or the actual or ostensible employees of his client who were involved with the plaintiff's care and treatment.  *See Mertis v. Oh*, No. 1547 MDA 2021, 2022 WL 3036698 *3, ___ A.3d ___ (Pa. Super. Ct. Aug. 2, 2022).  The parties agree that the relevant exception here is subsection (2), which provides that the rule does "not prevent an attorney from obtaining information from (2) an employee of the attorney's client ...."  Pa. R.C.P. 4003.6(2).  During the argument, plaintiffs' counsel conceded that each of the non-party proposed deponents are employees of LVPG, that LVPG is represented by defense counsel and her firm who are the subjects of

---

[4]  Plaintiffs' counsel has stated that defense counsel has only contacted two of the three deponents for the purposes of scheduling their respective depositions to which plaintiffs' counsel has no objection. (Doc. 44, at 2).

this motion to disqualify, and that the employees were treating physicians of the plaintiff, Christina Alfrey, for her care and treatment which are the focus of this action. They have also alleged those same facts in their motion. Thus, the deponents' status as employees of defense counsel's client fits squarely within the exception set forth in Pa. R.C.P. Rule 4003.6(2).

During the argument, plaintiffs' counsel suggested that because the Supreme Court of Pennsylvania adopted Rule 4003.6 on April 29, 1991, and that the rule has not been changed in over thirty years while the dynamics of the practice of medicine and the emergence of conglomerates employing physicians has changed over the same period, we should consider "step[ping] outside the box" in our interpretation of the rule. We decline the plaintiffs' invitation because under federal law, the rule is procedural, and we are not bound to follow it. Even if we found it applicable, the rule and the *actual employee of the attorney's client* exception applies to situations where, as here, the plaintiffs are seeking to hold Dr. Whitley's employer, LVPG, vicariously liable.

The language of the rule and the *actual employee of the attorney's client* exception permits the attorney to obtain *information* from the

employee of the attorney's client.  The rule does not define *information*.
Thus, we construe *information* by its definition in the English language
as "something received or obtained through informing: such as a:
knowledge obtained from investigation, study, or instruction b:
knowledge of a particular event or situation." *Information*, *Merriam-
Webster Dictionary* https://unabridged.merriam-webster.com/
unabridged/information (last visited January 25, 2023).  The rule and
applicable exception do not address whether the employee of the
attorney's client—the treating physician—can be represented or advised
by the same attorney for the employer-client—here LVPG.  With respect
to client representation, we defer in the first instance to defense counsel's
judgment in determining whether an attorney conflict of interest exists.
If such a conflict exists, we trust that counsel for the parties will bring it
to our attention if they are unable to resolve the issue among themselves.
Thus, we find that the rule and the pertinent exception permit defense
counsel to have ex parte communications with the three proposed
deponents who are also Christina Alfrey's treating physicians and
employees of defense counsel's client, LVPG.

In *White v. Behlke, Rabin & OB/GYN Consultants, Inc.*, 65 Pa. D. & C.4th 479 (Lackawanna Cty. Ct. Com. Pl. 2004), the court discussed the application of the rule and the ostensible agency exception which we find persuasive and analogous to our facts as it relates to the *actual employees of the attorney's client* exception at issue here.   In *White*, the court observed:

> Under Pennsylvania tort law, hospitals, HMOs and physicians may be vicariously liable for the negligence of their own employees, and the malpractice of independent contractors who are their ostensible or apparent employees.  In defending a medical negligence claim, *defense counsel obviously must be permitted to confer privately with* the attorney's client or the *actual* or ostensible *employees* of the client who were involved with the plaintiff's care and treatment which are the subject of the suit. For that reason, Rule 4003.6 states that it does "not prevent an attorney from obtaining information from (1) the attorney's client, (2) an employee of the attorney's client, or (3) an ostensible employee of the attorney's client."

*Id*. at 490 (citations omitted, emphasis added).

Thus, we will permit defense counsel to represent the three non-party proposed deponents at their depositions including the preparation thereof, and counsel may have ex parte discussions with these treating physicians who are employees of LVPG.  However, in the exercise of our

discretion and in the interest of fairness, we will set down reasonable safeguards to assure that the potential for overreaching is avoided.

While we have no doubt that defense counsel's ex parte discussions with the three non-party deponents will relate to the facts of this case only,[5] out of an abundance of caution, to prevent any potential overreaching, intended or unintended, and to strike a fair balance, defense counsel shall be prohibited from having any discussions with the three non-party deponents employed by LVPG about the following topics: (1) the impact of a jury's award upon a physician's professional reputation or the reputation of LVPG; (2) the rising costs of malpractice insurance premiums, the current rates of malpractice insurance premiums, or malpractice insurance generally; (3) the notion that the non-party deponents might be the next persons to be sued; (4) matters irrelevant to this lawsuit and personally damaging to the plaintiff, Christina Alfrey; and (5) other topics unrelated to the care and treatment of the plaintiff, Christina Alfrey, which formed the basis of this lawsuit,

---

[5]    "There is a dearth of decisions in which ['horseshedding'] has been reported, but the danger of excessive and unethical horseshedding exists in EVERY ex parte communication between counsel and the witness, particularly including the client." *McLaughlin*, 2020 WL 2896681, at *2 (emphasis in original).

and which might influence the treating physicians' views.  Further, defense counsel is precluded from sharing with counsel for the other defendants, the nature of any ex parte discussions with the non-party deponents.  Counsel for LVPG shall inform each of the deponents that they may not reveal the confidences, if any, of the plaintiff, Christina Alfrey, which are not pertinent to the pending litigation and which may be subject to the patient-physician privilege.  Finally, plaintiffs' counsel is permitted to fully explore, at deposition, the substance of the contacts between defense counsel and any of the proposed deponents, except for those protected by the attorney-client privilege, and counsel may impeach the credibility of the deponents based on influence, bias, or personal interest.

An appropriate order follows.

**_s/Joseph F. Saporito, Jr._**
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated:  January 25, 2023