UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTINA ALFREY and
JEFFREY FAY, Individually and as
Administrators of the Estate of
L.A.F., deceased,

        Plaintiffs,

        v.

KARI A. WHITLEY, M.D., et al.,

        Defendants.

CIVIL ACTION NO. 3:21-cv-01629

(SAPORITO, C.M.J.)

## MEMORANDUM

Now before the court is a motion *in limine* by defendants Kari A. Whitley, M.D., Lehigh Valley Physician Group, and Lehigh Valley Health Network, Inc., seeking an order precluding any reference, testimony, argument, or opinions regarding APGAR scores calculated by a non-party fact witness, paramedic Emily Whitelavich. Doc. 149. The motion is fully briefed and ripe for decision. Doc. 151; Doc. 228.

Whitelavich was part of an EMS crew that transported plaintiff Christina Alfrey, who was experiencing preterm labor, from Wayne Memorial Hospital to Lehigh Valley Cedar Crest on December 6, 2019. Whitelavich was the paramedic responsible for Alfrey's care in the back

of the ambulance. During the transport, Whitelavich participated in delivery of Alfrey's infant child, L.A.F.

At her deposition, Whitelavich testified that she examined the newborn infant and calculated a one-minute APGAR score of 7. She testified that she did not perform a five-minute APGAR rating because she was busy delivering the placenta and working the phones to try to find a hospital closer than Lehigh Valley Cedar Crest to provide emergent care for Alfrey and L.A.F. At her deposition, Whitelavich was unable to recall the specific components that comprise an APGAR calculation, and she was unable to recall specific categories in which the baby lost points in the one-minute APGAR rating that she did perform. Whitelavich also testified that she had never before performed an APGAR calculation.

The moving defendants seek an order precluding any reference at trial to the one-minute APGAR rating calculated by Whitelavich, arguing that Whitelavich, who was a rookie paramedic at the time with minimal training in neonatal treatment or resuscitation, was unqualified to offer a lay opinion regarding L.A.F.'s APGAR score on December 6, 2019. They further seek to preclude any expert witnesses from relying on the APGAR score calculated by Whitelavich as a basis for his or her expert opinion

because the APGAR score calculated by Whitelavich is unreliable.

The APGAR test is a clinical rating scale used to evaluate a newborn baby's condition and determine the need for immediate resuscitation efforts. *See* 1 Monique Leahy, *Attorneys Medical Advisor* § 14:253, Westlaw (database updated Mar. 2024). As another federal district court has summarized:

> The purpose of an APGAR score is to help determine whether a newborn child requires medical treatment. APGAR scores are based on an essentially subjective assessment of a baby's heart, respiration, muscle tone, color and grimace reflex. Each component receives a rating of 0–2 points, and the overall score is simply the sum of the points assigned to each component. The perceived need for treatment is inversely proportional to the APGAR score.

*Campbell v. United States*, No. 92-0121, 1994 WL 16014541, at *2 (D.R.I. Apr. 12, 1994). The APGAR test is incorporated into Pennsylvania's statewide EMS basic life support protocol for emergency childbirth. *See* Bureau of Emergency Med. Servs., Pa. Dep't of Health, *Pennsylvania Statewide Basic Life Support Protocols* 781-1 (2019) (effective July 1, 2011) (instructing EMTs to "[a]ssess and record APGAR scores at 1 and 5 minutes after delivery"), https://www.health.pa.gov/topics/Documents/EMS/2019%20PA%20BLS%20Protocols%20Final.pdf   [https://perma.cc/

M8RB-2RDU]. These protocols also include a simple chart providing guidance on the almost-mechanical calculation of an APGAR score, based on the treating EMT's mostly subjective assessment of the newborn infant's appearance (color),[1] pulse (heart rate),[2] grimace (irritability),[3] activity (muscle tone),[4] and respiratory effort.[5] *See id.* at 781-2 & app. A.

Although she may have been a "rookie" EMT at the time, Whitelavich confirmed at her deposition that she had been certified as both an EMT and a paramedic.[6] Both certificates required both initial

---

[1] If "[b]lue, pale," zero points are assigned to this category. If "[b]ody pink, [e]xtremities blue," one point is assigned. If "[a]ll pink," two points are assigned.

[2] If pulse is "[a]bsent," zero points. If "<100" beats per minute, one point. If ">100" beats per minute, two points. This is the only fully objective component to the APGAR score.

[3] The EMT is instructed to evaluate the neonate's response to either a catheter in his or her nostril or a finger snap against the sole of his or her foot. If "[n]o response," zero points. If "[g]rimace or weak cry," one point. If "[c]ough/sneeze or withdraws foot and cries," two points.

[4] If "[l]imp," zero points. If "[s]ome flexion of arms and/or legs," one point. If "[w]ell flexed," two points.

[5] If "[a]bsent," zero points. If "[s]low respirations," one point. If "[s]trong cry," two points.

[6] "While the terms are sometimes used interchangeably, paramedics receive more advanced training than EMTs." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 663 (9th Cir. 2021); *see also Beswick v. City of Phila.*, 185 F. Supp. 2d 418, 423 (E.D. Pa. 2001) (recognizing that paramedics have more training than EMTs). Paramedics are trained to provide advanced life support services; EMTs are trained to provide only basic

*(continued on next page)*

coursework and ongoing continuing education and recertification. While she had never delivered a baby before, Whitelavich's prior training had included clinical labor and delivery rotations where she observed several deliveries, approximately four hours of neonatal resuscitation training, and a two-day course on pediatric advanced life support.

Based on the foregoing, we find that Whitelavich's calculation of a one-minute APGAR score for L.A.F. on December 6, 2019, is admissible lay opinion evidence. The APGAR score was an aggregate rating based on her personal perception of each of the five APGAR factors—the infant's appearance, pulse, grimace, activity, and respiratory effort—and calculated in compliance with a statewide EMS basic life support protocol promulgated in 2011. The APGAR score is helpful to clearly understanding Whitelavich's testimony or determining the condition of L.A.F. at the time of the emergency delivery and the subsequent deterioration of the baby's condition. We find this particular testimony has a reasonable basis grounded in Whitelavich's specialized knowledge

---

life support services. *See City of Phila. v. Int'l Ass'n of Firefighters, Local 22*, 999 A.2d 555, 559 n.5 (Pa. 2010). Notably, the APGAR test is included in the statewide basic life support protocol for emergency delivery that may be performed by either EMTs or more highly trained paramedics.

as a certified EMT and certified paramedic, including specific training she received in neonatal resuscitation and pediatric advanced life support. *See Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1201 (3d Cir. 1995) ("Rule 701 requires that a lay opinion witness have a reasonable basis grounded either in experience or specialized knowledge for arriving at the opinion that he or she expresses.") (emphasis omitted). To the extent the defendants contend that Whitelavich's APGAR score is technically or medically deficient, that goes to the weight of this evidence rather than its admissibility, which may be addressed on cross-examination or by the presentation of rebuttal evidence. *See id.* at 1200 n.11.

Accordingly, the motion *in limine* (Doc. 149) will be denied.

An appropriate order follows.

Dated: July 24, 2024                    s/Joseph F. Saporito, Jr.
                                        JOSEPH F. SAPORITO, JR.
                                        Chief United States Magistrate Judge