# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA ALFREY and JEFFREY FAY, Individually and as Administrators Of the Estate of L.A.F., deceased | : <br> : <br> : <br> : <br> : |
| Plaintiffs, | : |
| vs. | : MEDICAL <br> : PROFESSIONAL <br> : LIABILITY <br> : <br> : JURY TRIAL DEMANDED |
| KARI A. WHITLEY, M.D., LEHIGH VALLEY PHYSICIANS GROUPS AFFILIATED WITH THE LEHIGH VALLEY HEALTH NETWORK t/a LVPG MATERNAL FETAL MEDICINE-MONTAGE, LEHIGH VALLEY HEALTH NETWORK, INC., UNITED STATES OF AMERICA and WAYNE MEMORIAL HOSPITAL | : <br> : Hon. Joseph F. Saporito, Jr. <br> : <br> : <br> : <br> : CIVIL: 3:21-CV-01629-JFS <br> : <br> : <br> : |
| Defendants. | : |

**PLAINTIFFS' MOTION *IN LIMINE* TO
PRECLUDE DEFENDANTS FROM INVOKING
OPINION TESTIMONY OF DR ERIC RITTENHOUSE
AND TO SUSTAIN THEIR RELATED OBJECTION RAISED
IN THE DEPOSITION OF DR JAMES PELLEGRINI**

Plaintiffs Christina Alfrey and Jeffrey Fay, Individually and as

Administrators of the Estate of L.A.F., their deceased son, submit the present

Motion to preclude Defendants from invoking opinion testimony from Eric R. Rittenhouse, M.D., and to sustain their related objection raised in the deposition of Dr. James Pellegrini, *to wit*:

    1. In support of this medical malpractice action, among other allegations, Plaintiffs have raised the conduct of Eric R. Rittenhouse, M.D., (Dr. Rittenhouse), who is employed by Defendant United States and who engaged in treatment of Plaintiff Christina Alfrey at various relevant times, including in the early morning hours of December 6, 2019.

    2. As this action has proceeded, Plaintiffs deposed Dr. Rittenhouse on June 29, 2022.

    3. At that time, counsel for Plaintiffs asked if Dr. Rittenhouse would "act as an expert on [his] own behalf at the time of trial," to which his counsel, Assistant United States Attorney Craig Black, answered:

> 14 We haven't had specific
> 15 discussions regarding that. Obviously, under the
> 16 Federal rules if he serves as an expert, you're
> 17 entitled to depose him at that time. So we will
> 18 disclose that pursuant to the case management rule.

Portion of Deposition of Dr. Rittenhouse, p. 34: 11-20 (Appendix A).

    4. At no time thereafter has Dr. Rittenhouse been identified as an expert, by *any* defendant, provided any expert report, nor been offered for further deposition as indicated by AUSA Black.

5. Nonetheless, during deposition of Plaintiffs' expert, James W. Pellegrini, M.D. (Dr. Pellegrini) on July 29, 2024, counsel for Defendant Kari A. Whitley, M.D. (Dr. Whitley) sought to cross examine using an expert opinion elicited from Dr. Rittenhouse which is not in his treatment records but arose only in his (Dr. Rittenhouse's) deposition. (Deposition of Dr. Pellegrini, pp. 49: 1 to 55: 4 (Appendix B)). (The portion of this deposition at issue related to Dr. Rittenhouse's opining as to the gestational age of Plaintiffs' child, L.A.F. at the time of his birth and death, something which can only be determined from an expert perspective. *Id*.)

6. At that time, counsel for Plaintiffs objected, *id*. at p. 50: 2, *et seq.*, and lengthy discussion ensued, which included, again, reassertion by counsel for Defendant United States that Dr. Rittenhouse *will not* be presented as an expert at trial. *Id*. at p. 50: 18-19.

7. Counsel for Plaintiffs further objected to this elicited testimony as offensive since it related to "facts not in evidence." *Id.* at p. 54: 1-2.

8. Per this Court's previous Orders, including their revision and several extensions at the request of various defense motions, deadline for identification of the parties' experts, exchange of their reports, and identification of same as trial witnesses has long past.

9.  Although this Court had also directed filing of motions *in limine* by June 17, 2024, the present motion is necessary at this time given that Dr. Pellegrini's testimony, recorded by video for use at trial, was taken on July 29, 2024, with counsel meeting thereafter via Zoom on August 2, 2024 at which time same were unable to agree on resolution of the present issue, but agreeing that such resolution would remain with the Court.

10.  Along with the timing restrictions regarding expert witnesses which this Court imposed, the Federal Rule of Civil Procedure 26 likewise imposes its own such restrictions and requirements of disclosure.

11.  With the specific declaration of the United States that Dr. Rittenhouse is *not* an expert in this matter, any opinion offered as such in his prior deposition is a nullity and unavailable for use at the time of trial.

12.  Defendant Dr. Whitley's attempt to exploit Dr. Rittenhouse's opinion during the trial deposition of Plaintiffs' expert Dr. Pellegrini was impermissible and requires its exclusion from said deposition and the presentation of same to the jury.

WHEREFORE, Plaintiffs pray this Honorable Court to preclude invocation by Defendants of expert opinion from Dr. Eric Rittenhouse, and to sustain their object and exclude the objectionable portion of Dr. Pellegrini's trial deposition outlined herein.

                                              Respectfully Submitted,
                                              SELINGO GUAGLIARDO, L.L.C.

                 By:    /s/Joseph M. Cosgrove
                          Attorney I.D. No. 37130
                          jcosgrove@getyourselfagoodlawyer.com
                          David J. Selingo, Esq.
                          Attorney I.D. No. 66368
                          dselingo@getyourselfagoodlawyer.com
                          Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA ALFREY and JEFFREY FAY, Individually and as Administrators Of the Estate of L.A.F., deceased | : : : : : |
| Plaintiffs, | : : |
| vs. | : MEDICAL : PROFESSIONAL : LIABILITY : |
| | : JURY TRIAL DEMANDED |
| KARI A. WHITLEY, M.D., LEHIGH VALLEY PHYSICIANS GROUPS AFFILIATED WITH THE LEHIGH VALLEY HEALTH NETWORK t/a LVPG MATERNAL FETAL MEDICINE-MONTAGE, LEHIGH VALLEY HEALTH NETWORK, INC., UNITED STATES OF AMERICA and WAYNE MEMORIAL HOSPITAL | : : Hon. Joseph F. Saporito, Jr. : : : : CIVIL: 3:21-CV-01629-JFS : : : |
| Defendants. | : |

## CERTIFICATE OF SERVICE

I hereby certify that the present Motion has been served upon Defendants through their registered counsel via the Court's ECF system, this 5th day of August 2024.

By: /s/Joseph M. Cosgrove
Attorney I.D. No. 37130
Attorney for Plaintiff
345 Market Street
Kingston, PA 18704
(570) 287-2400

6

# APPENDIX A

Case 3:21-cv-01629-JFS  Document 280  Filed 08/05/24  Page 8 of 19

Page: 1 (1)

Deposition of Eric Rittenhouse, M.D.    Christina Alfrey & Jeffrey Fay vs. Kari A. Whitley, M.D., et al.

```
IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTINA ALFREY and          :   MEDICAL PROFESSIONAL
JEFFREY FAY,                  :   LIABILITY
Individually and as           :
Administrators of the         :
Estate of L.A.F.,             :
deceased,                     :
                              :
     Plaintiffs               :
                              :
     vs.                      :
                              :
KARI A. WHITLEY, M.D.,        :   JURY TRIAL DEMANDED
LEHIGH VALLEY                 :
PHYSICIANS GROUPS             :
AFFILIATED WITH THE           :
LEHIGH VALLEY HEALTH          :
NETWORK t/a LVPG              :
MATERNAL FETAL                :
MEDICINE-MONTAGE,             :
LEHIGH VALLEY HEALTH          :
NETWORK, INC., UNITED         :
STATES OF AMERICA and         :
WAYNE MEMORIAL                :
HOSPITAL,                     :
                              :
     Defendants               :   CIVIL: 3:21-CV-01629-JFS
```

DEPOSITION OF ERIC R. RITTENHOUSE, M.D.

Wednesday, June 29, 2022

10:00 a.m.

William J. Nealon Federal Building
235 North Washington Avenue
Scranton, Pennsylvania 18503

Karin E. Volpitta, Notary Public

DEVINE DEPOSITIONS
573 Indian Run Drive
Hummelstown, Pennsylvania 17036
(717) 612-2403

Case 3:21-cv-01629-JFS  Document 280  Filed 08/05/24  Page 9 of 19

Page: 12 (33 - 36)

Deposition of Eric Rittenhouse, M.D.          Christina Alfrey & Jeffrey Fay vs. Kari A. Whitley, M.D., et al.

Page 33

Q. So that would be something she told you, is that right?
A. Probably.
Q. Why is that important?
A. It's not really important.
Q. Thank you.
A. Actually, can I qualify that?
Q. Sure.
A. It is important in somebody with recurrent pregnant loss. Remember, I know nothing about her as of this date. People with recurrent pregnancy loss, if they have different partners with pregnancy loss, you look at it differently than if they have the same partner if you're working them up for that, so it does matter.
    So that's why I asked that because I have a strong infertility background, just to clarify why I put that in there.
Q. All right. So then you're looking more at the woman rather than the partner, is that right?
A. Correct. And I also have a note in here from this record that says that she had three spontaneous ABs in a row, which that would have been what I had looked at before I looked at her record.
Q. So that gives you some background

Page 34

information --
A. Right.
Q. -- to make your analysis. Are you aware that Christina Alfrey had a child since this pregnancy that we're here on today?
A. I am not.
Q. And having a live birth child after this pregnancy with the same partner, Jeffrey Fay, how would that affect any analysis if you knew it?
A. It wouldn't.
Q. Okay. Just a quick question, Doctor, are you going to act as an expert on your own behalf at the time of trial?
    MR. BLACK: We haven't had specific discussions regarding that. Obviously, under the Federal rules if he serves as an expert, you're entitled to depose him at that time. So we will disclose that pursuant to the case management rule.
    MR. SELINGO: I appreciate that. Let's keep going then.
BY MR. SELINGO:
Q. So in the 48 hour period you have the hCG levels rising from 21,000 to 25,000. What does that tell you?
A. It's not a normally rising quant.

Page 35

Typically you want to see a 66 percent increase of that number, which is a fairly stable assumption from about four weeks until about ten weeks depending on what article or how were trained. But at this point you would expect that 21,000 to have been at least 35.
Q. And being at 25, what does that mean to you?
A. That doesn't mean anything. It means it went up but it's not as high as I would have expected.
Q. And the progesterone level of 9.5, what does that mean?
A. Progesterone is our way of -- another way of helping to determine health of the pregnancy and whether it's ectopic. And, you know, I would have liked this number to be well above 10 but it wasn't. So I have an empty sac, which is an abnormal finding for a beta level of this point. Typically the cross is at 5,000 or above, we should be seeing a fetal pole.
Q. So you have some concern at this point, is that right?
A. Yes.
Q. And you've been frank, if you look at the next paragraph, with the patient about that concern; is that right?

Page 36

A. Yes.
Q. Now, she asked for oral progesterone; is that right?
A. She did.
Q. And what would be the benefit of that?
A. There is some old theory that progesterone supplementation can help a pregnancy that is otherwise in trouble; however, that has been pretty much refuted. But there is no harm in giving the progesterone and sometimes we are treating the mind as much as anything else.
Q. And that's what I was just going to say. Given her anxiety, this is something that may calm her down?
A. Or at least give her the feeling that she's doing everything possible.
Q. Perfect, thank you. But you did tell her that there's a possibility this pregnancy may not succeed, is that right?
A. Yes, I did say it makes it very likely a pregnancy, it will not succeed.
Q. So based on that and the condition that you see here, you decide to have the patient come back to the clinic in one week; is that right? Do you see at the bottom?

# APPENDIX B

1

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
 2
    CHRISTINA ALFREY AND          : MEDICAL PROFESSIONAL
 3  JEFFREY FAY, INDIVIDUALLY     : LIABILITY
    AND AS ADMINISTRATORS OF      :
 4  THE ESTATE OF L.A.F.,         : JURY TRIAL DEMANDED
    DECEASED,                     :
 5                    PLAINTIFFS  : CIVIL: 3:21-CV-01629-JFS
                                  :
 6            VS.                 :
                                  :
 7  KARI A. WHITLEY, M.D.,        :
    LEHIGH VALLEY PHYSICIANS      :
 8  GROUPS AFFILIATED WITH THE    :
    LEHIGH VALLEY HEALTH NETWORK  :
 9  T/A LVPG MATERNAL FETAL       :
    MEDICINE-MONTAGE, LEHIGH      :
10  VALLEY HEALTH NETWORK, INC.,  :
    UNITED STATES OF AMERICA AND  :
11  WAYNE MEMORIAL HOSPITAL,      :
                      DEFENDANTS  :
12

13

14
                 REMOTE VIDEO DEPOSITION OF
15                JAMES W. PELLEGRINI, M.D.

16                  Monday, July 29, 2024

17                       4:59 p.m.

18       Bethann M. Rogers, RPR, Court Reporter
                      Notary Public
19
               Luz Cabrales, Videographer
20

21

22

23                   DEVINE DEPOSITIONS
```

11  BY MS. SHWED:
12      Q.    You see there, Doctor, it's listed --
13      A.    Yes.
14      Q.    -- Number 6 as your materials reviewed
15  deposition of Eric Rittenhouse.
16      A.    Thank you.
17      Q.    Sure.  And I'm going to show you a portion of
18  his deposition.
19            MS. SHWED:  Can you bring up for me,
20  please, Bates -- or, I'm sorry, D50, Page 150.
21            (Exhibit D50 produced for identification)
22            THE VIDEOGRAPHER:  Counsel, can we go off
23  the video record for a second?
24            MS. SHWED:  Sure.
25            THE VIDEOGRAPHER:  Off the video record

                                                            49

1   5:59.
2             (Discussion held off the record)
3             THE VIDEOGRAPHER:  Back on the video
4   record 6:03.
5   BY MS. SHWED:
6       Q.    I'm sorry, Doctor, we took a break so we

```
7    could do some technology things.  I just want to show
8    you an exhibit.  It's part of Dr. Eric Rittenhouse's
9    deposition, and I'm going to read it to you.  It's a
10   little long, so I apologize to you for it, but we'll
11   just -- we'll go through it, and I promise I'll read
12   slow.
13              It starts on Line 17, so you can read along
14   with me.  And this is questioning that I had of
15   Dr. Rittenhouse during his deposition.
16              I said, the other thing I just wanted to make
17   sure I understood there at the end of some of the
18   questioning by Attorney Selingo there was some reference
19   to your belief that this -- that there was a 23 week,
20   1 day time frame you were talking about.  And can you
21   just explain to me so I make sure I understand why it is
22   that you believe Miss Alfrey was 23 weeks and 1 day
23   versus what some of the records are reflecting as
24   23 weeks and 5 days?
25              MS. SHWED:  And then can you go to the
```

50

```
1    next page, please.
2              MR. SELINGO:  Objection.
```

```
 3                THE VIDEOGRAPHER:  Off the video record
 4    6:04.
 5                MR. SELINGO:  So the objection to this is
 6    it's expertise.  It's an opinion by Dr. Rittenhouse
 7    after the fact, not at the time.  All of his records
 8    indicate that he believed this baby was 23 weeks and
 9    5 days in the hospital that morning.  During his
10    deposition I admit that he drew an opinion that he
11    believed this baby was 23 weeks and 1 day.
12                But it was specifically stated in the
13    deposition transcript that Dr. Rittenhouse is not going
14    to be an expert at trial.  Certainly if he's going to be
15    an expert at trial, Tim -- or, Mr. Judge, please advise
16    us of that now, and we'll do his deposition prior to
17    trial.
18                MR. JUDGE:  Dr. Rittenhouse will not be
19    an expert at trial.
20                MR. SELINGO:  Thank you.
21                MS. SHWED:  Were you done with your
22    objection?
23                MR. SELINGO:  Well, yeah.  I'm not even
24    going to let him answer this, Amy.  You're going to have
25    to get the judge on the line for this one.
```

51

1        MS. SHWED: Well, I don't think you can
2   instruct him not to, and I'm not getting a judge at
3   6:00. So we're videotaping it. Your objection is
4   preserved. And if the judge says that this is not
5   appropriate for me to ask him, it can certainly be
6   removed from the video and the transcript.
7        And just to -- for the record to address
8   your specific objection, Dr. Rittenhouse is not an
9   expert. He's not going to opine to a reasonable degree
10  of medical certainty whether someone breached the
11  standard of care. Dr. Rittenhouse is -- was the
12  treating obstetrics physician who based on his testimony
13  drew a conclusion from a six-week ultrasound that he
14  reviewed and took a measurement of the crown-rump length
15  which is part of his testimony, and based on that
16  information that he has as a treating physician, not as
17  an expert, he believed the baby was 23 weeks and 1 day.
18  So I think that -- let me just put it on the record, and
19  you can do your thing.
20       MR. SELINGO: I wasn't interrupting you.
21       MS. SHWED: No, I know. I thought you
22  were. That's why I said just let me finish. I think
23  that he is capable -- I am capable of putting up the

```
24   ultrasound from six weeks and asking him based on that
25   ultrasound and something known as the crown-rump length
```

                                                                    52

```
1    what gestational age the baby was when he was treating
2    him.  So I think it's appropriate to get into.
3             And, again, I don't know that you can
4    instruct him not to answer.  I'm never getting a judge
5    at 6:06 p.m. on a Monday, and so there's no prejudice to
6    you.  If the judge rules in your favor, it can be
7    removed from the transcript.
8             MR. SELINGO:  So, Amy, if you could show
9    me a document where Dr. Rittenhouse said at the time of
10   treatment that this baby was 23 weeks and 1 day, I will
11   agree with you.  But, otherwise, what he has done is
12   drew an opinion at the time of his deposition as to the
13   gestational age of this baby which is an expert opinion.
14   I know it's not standard of care, but that's not the
15   only expert opinions we do.  Right here we're talking
16   about causation which is an expert opinion, so it
17   doesn't have to be standard of care.
18             Tim Judge who is counsel for
19   Dr. Rittenhouse through the USA has just clearly told
```

20  you Dr. Rittenhouse is not going to be an expert at
21  trial.  That opinion will be excluded at trial.  So now
22  you're trying to put evidence in front of Dr. Pellegrini
23  that will not be admitted at the time of trial.  You're
24  just wasting our time at this point.  It's after
25  6:00 p.m. on a Monday evening.

                                                        53

1               MS. SHWED:  Yeah, Dave, and we started at
2   5:00 to start it for your client's convenience.  So
3   regardless of when I did it, I wouldn't have been able
4   to get a judge to do it now.  They're not open at 5:00.
5               MR. SELINGO:  Do you agree there's no
6   document that shows this baby was 23 weeks and 1 day
7   according to Dr. Rittenhouse?
8               MS. SHWED:  No, because I think the
9   ultrasound shows the crown-rump measurement.  I don't --
10              MR. SELINGO:  Where is the document at
11  the time, Ms. Shwed?
12              MS. SHWED:  That's what I'm talking
13  about.
14              MR. SELINGO:  Where is the document?
15  There is no document.

```
16              MS. SHWED:  Dave, we can argue this till
17   we're blue in the face.  It's a video.  The judge will
18   decide whether the jury gets to see it or not.  You
19   preserved -- I understand your objection, but I don't
20   think you're in a position to tell him -- instruct him
21   not to answer.  And with all due respect to Tim, I don't
22   think he is either.  Now, if you object at the time of
23   trial that Dr. Rittenhouse can't testify to this, then
24   it's excluded.  What is your prejudice for him answering
25   it today?
```

54

```
 1              MR. SELINGO:  Well, it's facts not in
 2   evidence.  It's very clear that it's facts not in --
 3              MS. SHWED:  If the judge rules in your
 4   favor, it can be eliminated so that the jury never hears
 5   it.
 6              MR. SELINGO:  There are no other experts
 7   that are going to testify to that.  So even if you ask
 8   it as a hypothetical which is probably the only way you
 9   could possibly try to get it in, you're not going to
10   have somebody testify to that fact at the time of trial.
11   So I don't know --
```

```
12              MS. SHWED:  We can agree to disagree on
13   that.  But my point to you is there's no jury here.
14   This will be preserved.  And then if the judge says Dave
15   is absolutely right and none of this should come in,
16   it's easily removed from the transcript and the video.
17   The jury does not get to hear it.
18              MR. SELINGO:  Amy, I just thought that
19   you had more experience than this that you wouldn't go
20   into something like this.  Fine, we'll do it, all right,
21   to satisfy you and your I guess query as to what would
22   happen.  We can all go on the website.  It's available
23   on your computer.  You can do that yourself if you
24   wanted to.  But if you want him to go through it, I
25   don't think he has the website up, and he probably has
```

                                                                55

```
1    not even looked at it, but we'll do it, all right?
2              MS. SHWED:  Yep.
3              THE VIDEOGRAPHER:  Back on the video
4    record 6:10.
5    BY MS. SHWED:
6        Q.  I'm just going to continue reading, Doctor,
7    on Page 151.
```