# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINA ALFREY and | : | |
| JEFFREY FAY, | : | |
| Individually and as Administrators | : | |
| Of the Estate of L.A.F., deceased | : | |
| | : | |
| Plaintiffs, | : | |
| | : | MEDICAL |
| vs. | : | PROFESSIONAL |
| | : | LIABILITY |
| | : | |
| | : | JURY TRIAL DEMANDED |
| KARI A. WHITLEY, M.D., | : | |
| LEHIGH VALLEY PHYSICIANS | : | Hon. Joseph F. Saporito, Jr. |
| GROUPS AFFILIATED WITH THE | : | |
| LEHIGH VALLEY HEALTH NETWORK | : | |
| t/a LVPG MATERNAL FETAL | : | |
| MEDICINE-MONTAGE, LEHIGH | : | CIVIL: 3:21-CV-01629-JFS |
| VALLEY HEALTH NETWORK, INC., | : | |
| UNITED STATES OF AMERICA and | : | |
| WAYNE MEMORIAL HOSPITAL | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFFS' BRIEF IN SUPPORT OF
## MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM
## INVOKING OPINION TESTIMONY OF DR ERIC RITTENHOUSE
## AND TO SUSTAIN THEIR RELATED OBJECTION RAISED
## IN THE DEPOSITION OF DR JAMES PELLEGRINI

*Introduction:*

Plaintiffs Christina Alfrey and Jeffrey Fay, Individually and as

Administrators of the Estate of L.A.F., their deceased son, submit the present Brief

in support of their Motion to preclude Defendants from invoking opinion testimony from Eric R. Rittenhouse, M.D. and to sustain their related objection raised in the deposition of Dr. James Pellegrini.

***Relevant facts:***

This Court is well aware of the factual allegations underlying this medical malpractice action. The present issue relates to an evidentiary question and the attempt by counsel for Defendant Kari A. Whitley, M.D. (Dr. Whitley) to employ an impermissible expert opinion of Eric R. Rittenhouse, M.D., (Dr. Rittenhouse) made during said counsel's cross examination during the trial deposition of Plaintiffs' expert, James W. Pellegrini, M.D. (Dr. Pellegrini). Dr. Rittenhouse is an employee of Defendant United States, and his actions are at issue for Plaintiffs' claim against said Defendant. At his deposition, Dr. Rittenhouse was asked by Plaintiffs' counsel if he would "act as an expert on [his] own behalf at the time of trial," with Assistant United States Attorney Craig Black answering:

> 14 We haven't had specific
> 15 discussions regarding that. Obviously, under the
> 16 Federal rules if he serves as an expert, you're
> 17 entitled to depose him at that time. So we will
> 18 disclose that pursuant to the case management rule.

Portion of Deposition of Dr. Rittenhouse, p. 34: 11-20 (Appendix A).

At no time has the United States or *any* defendant designated Dr. Rittenhouse, nor has he been identified as such at any time by any party. As such,

2

no subsequent deposition of Dr. Rittenhouse (which, as Attorney Black indicated,

would accompany any designation of his as an expert) has been noticed or taken

place nor has any expert report by Dr. Rittenhouse been executed. Nonetheless,

during the trial deposition of Plaintiffs' expert Dr. Pellegrini, counsel for Defendant

Dr. Whitley attempted to employ Dr. Rittenhouse's inadmissible expert opinion

regarding his subsequent surmise as to the gestational age of Plaintiffs' child,

L.A.F. at the time of his birth and death (something which arose out of nowhere

during Dr. Rittenhouse's deposition and was nowhere to be found in his various

records), sparking objection from Plaintiffs' counsel and lengthy off the record

discussion. *See* Deposition of Dr. Pellegrini, pp. 49: 1 to 55: 4 (Appendix B).

During discussion between counsel for all parties on August 2, 2024, Dr. Whitley's

counsel and Plaintiffs' counsel were unable to reach agreement on this issue,

agreeing only that same would have to be decided by the Court. The present

motion and brief urge this Court to preclude admission or reference at trial to any

expert opinion expressed by Dr. Rittenhouse and to sustain the objection at issue

herein.

**Argument:**

The questioning at issue during the deposition of Dr. Pellegrini represents

Defendant Whitley's counsel's attempt to employ an expert opinion from someone

who ***has not*** been designated as an expert witness in this matter (on the contrary,

Dr. Rittenhouse's counsel has declared him ***not*** an expert witness), nor has he prepared a report or any documentation supportive of the position Defendant Whitley now attempts to advance. This effort by the Whitley team flouts not only the Federal Rules of Civil Procedure, but runs contrary to this Court's specific trial management directives. As such, the objection made by Plaintiffs' counsel during Dr. Pellegrini's deposition must be sustained and Defendant Whitley (or any defendant) must be precluded from admitting or referencing any expert opinion from Dr. Rittenhouse. To allow otherwise would permit an "end around" of these Rules and this Court's prior Orders.

"[F]ederal courts uniformly disapprove of trial by ambush," *Sud-Chemie, Inc. v. CSP Techs., Inc.*, 2006 WL 2246404, at *45 (S.D. Ind. Aug. 4, 2006). Fed. R. Civ. P. 26(a)(2) imposes particular duties of parties regarding disclosure of expert witnesses and the reports necessary to be submitted when same have been designated. "Since an important object of th[is] rule[ ] is to avoid trial by ambush, the district court typically sets temporal parameters for the production of such information. *See, e.g.,* Fed.R.Civ.P. 16(b). Such a timetable promotes fairness both in the discovery process and at trial." *Macaulay v. Anas*, 321 F.3d 45, 50 (1st Cir. 2003)(cleaned up).

These principles are especially important in the context of expert witnesses:

Recognizing the importance of expert testimony in modern trial practice, the Civil Rules provide for extensive pretrial disclosure of expert testimony.

> ***This sort of disclosure is consonant with the federal courts' desire to make a trial less a game of blindman's buff and more a fair contest*** with the basic issues and facts disclosed to the fullest practical extent. In the arena of expert discovery—a setting which often involves complex factual inquiries—Rule 26 increases the quality of trials by better preparing attorneys for cross-examination, minimizing surprise, and supplying a helpful focus for the court's supervision of the judicial process.

*Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992)(cleaned up)(emphasis added).

In the present case, Dr. Rittenhouse's "opinion" as to gestational age is only relevant in an expert context. Had he been designated as such (and as his attorney, Mr. Black indicated), Plaintiffs would have had the opportunity to further depose him as he appeared in that guise, and would have had his expert report to peruse. Further, Plaintiffs own experts would then have had the opportunity to dissect that deposition testimony and subsequent report, and reach their own conclusions on the issue. Without this process, extraction of any expert opinion from the discovery deposition of Dr. Rittenhouse is utterly impermissible. To allow otherwise renders the confines of Rule 26 meaningless.

More to the point, this Court issued multiple Orders outlining pretrial deadlines, granting a number of extensions to same, and ultimately issuing a series of trial management and scheduling Orders. *See* Docs. 133-135. At no time did Defendant Whitley attempt to operate within the boundaries of these Orders to make Dr. Rittenhouse's "gestational age" opinion fit properly in the "expert" category. It is not for Plaintiffs to outline the many steps Defendant Whitley could

have taken, but now with a jury selected, several trial depositions taken, and

opening instructions and statements about to be made, those opportunities have

long passed Defendant Whitley.

***Conclusion*:**

      There is only one remedy for this unfortunate and late situation, namely,

Plaintiffs' objection noted in the Pellegrini deposition must be sustained, with

Defendants precluded from invoking any expert opinion from Dr. Rittenhouse.

.

                                         Respectfully Submitted,
                                         SELINGO GUAGLIARDO, L.L.C.

                            By:    /s/Joseph M. Cosgrove
                                          Attorney I.D. No. 37130
                                          jcosgrove@getyourselfagoodlawyer.com
                                          David J. Selingo, Esq.
                                          Attorney I.D. No. 66368
                                          dselingo@getyourselfagoodlawyer.com
                                          Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINA ALFREY and | : | |
| JEFFREY FAY, | : | |
| Individually and as Administrators | : | |
| Of the Estate of L.A.F., deceased | : | |
| | : | |
| Plaintiffs, | : | |
| | : | MEDICAL |
| vs. | : | PROFESSIONAL |
| | : | LIABILITY |
| | : | |
| | : JURY TRIAL DEMANDED | |
| KARI A. WHITLEY, M.D., | : | |
| LEHIGH VALLEY PHYSICIANS | : Hon. Joseph F. Saporito, Jr. | |
| GROUPS AFFILIATED WITH THE | : | |
| LEHIGH VALLEY HEALTH NETWORK | : | |
| t/a LVPG MATERNAL FETAL | : | |
| MEDICINE-MONTAGE, LEHIGH | : CIVIL: 3:21-CV-01629-JFS | |
| VALLEY HEALTH NETWORK, INC., | : | |
| UNITED STATES OF AMERICA and | : | |
| WAYNE MEMORIAL HOSPITAL | : | |
| | : | |
| Defendants. | : | |

### CERTIFICATE OF SERVICE

I hereby certify that the present Brief has been served upon Defendants through their registered counsel via the Court's ECF system, this 5th day of August 2024.

By: /s/Joseph M. Cosgrove
Attorney I.D. No. 37130
Attorney for Plaintiff
345 Market Street
Kingston, PA 18704
(570) 287-2400

# APPENDIX A

Deposition of Eric Rittenhouse, M.D. ·        Christina Alfrey & Jeffrey Fay vs. Kari A. Whitley, M.D., et al.

| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| | FOR THE MIDDLE DISTRICT OF PENNSYLVANIA |
| 2 | |

```
CHRISTINA ALFREY and        :   MEDICAL PROFESSIONAL
JEFFREY FAY,                 :   LIABILITY
Individually and as         :
Administrators of the       :
Estate of L.A.F.,           :
deceased,                    :
                             :
     Plaintiffs              :
                             :
       vs.                   :
                             :
KARI A. WHITLEY, M.D.,       :   JURY TRIAL DEMANDED
LEHIGH VALLEY                :
PHYSICIANS GROUPS            :
AFFILIATED WITH THE          :
LEHIGH VALLEY HEALTH         :
NETWORK t/a LVPG             :
MATERNAL FETAL               :
MEDICINE-MONTAGE,            :
LEHIGH VALLEY HEALTH         :
NETWORK, INC., UNITED        :
STATES OF AMERICA and        :
WAYNE MEMORIAL               :
HOSPITAL,                    :
                             :
     Defendants              :   CIVIL: 3:21-CV-01629-JFS
```

DEPOSITION OF ERIC R. RITTENHOUSE, M.D.

Wednesday, June 29, 2022

10:00 a.m.

William J. Nealon Federal Building
235 North Washington Avenue
Scranton, Pennsylvania 18503

Karin E. Volpitta, Notary Public

DEVINE DEPOSITIONS
573 Indian Run Drive
Hummelstown, Pennsylvania 17036
(717) 612-2403

Case 3:21-cv-01629-JFS    Document 281    Filed 08/05/24    Page 10 of 20

Page: 12 (33 - 36)
Christina Alfrey & Jeffrey Fay vs. Kari A. Whitley, M.D., et al.

Deposition of Eric Rittenhouse, M.D.

**Page 33**

Q. So that would be something she told you, is that right?

A. Probably.

Q. Why is that important?

A. It's not really important.

Q. Thank you.

A. Actually, can I qualify that?

Q. Sure.

A. It is important in somebody with recurrent pregnant loss. Remember, I know nothing about her as of this date. People with recurrent pregnancy loss, if they have different partners with pregnancy loss, you look at it differently than if they have the same partner if you're working them up for that, so it does matter.

So that's why I asked that because I have a strong infertility background, just to clarify why I put that in there.

Q. All right. So then you're looking more at the woman rather than the partner, is that right?

A. Correct. And I also have a note in here from this record that says that she had three spontaneous ABs in a row, which that would have been what I had looked at before I looked at her record.

Q. So that gives you some background

**Page 34**

information --

A. Right.

Q. -- to make your analysis. Are you aware that Christina Alfrey had a child since this pregnancy that we're here on today?

A. I am not.

Q. And having a live birth child after this pregnancy with the same partner, Jeffrey Fay, how would that affect any analysis if you knew it?

A. It wouldn't.

Q. Okay. Just a quick question, Doctor, are you going to act as an expert on your own behalf at the time of trial?

MR. BLACK: We haven't had specific discussions regarding that. Obviously, under the Federal rules if he serves as an expert, you're entitled to depose him at that time. So we will disclose that pursuant to the case management rule.

MR. SELINGO: I appreciate that. Let's keep going then.

BY MR. SELINGO:

Q. So in the 48 hour period you have the hCG levels rising from 21,000 to 25,000. What does that tell you?

A. It's not a normally rising quant.

**Page 35**

Typically you want to see a 66 percent increase of that number, which is a fairly stable assumption from about four weeks until about ten weeks depending on what article or how were trained. But at this point you would expect that 21,000 to have been at least 35.

Q. And being at 25, what does that mean to you?

A. That doesn't mean anything. It means it went up but it's not as high as I would have expected.

Q. And the progesterone level of 9.5, what does that mean?

A. Progesterone is our way of -- another way of helping to determine health of the pregnancy and whether it's ectopic. And, you know, I would have liked this number to be well above 10 but it wasn't. So I have an empty sac, which is an abnormal finding for a beta level of this point. Typically the cross is at 5,000 or above, we should be seeing a fetal pole.

Q. So you have some concern at this point, is that right?

A. Yes.

Q. And you've been frank, if you look at the next paragraph, with the patient about that concern; is that right?

**Page 36**

A. Yes.

Q. Now, she asked for oral progesterone; is that right?

A. She did.

Q. And what would be the benefit of that?

A. There is some old theory that progesterone supplementation can help a pregnancy that is otherwise in trouble; however, that has been pretty much refuted. But there is no harm in giving the progesterone and sometimes we are treating the mind as much as anything else.

Q. And that's what I was just going to say. Given her anxiety, this is something that may calm her down?

A. Or at least give her the feeling that she's doing everything possible.

Q. Perfect, thank you. But you did tell her that there's a possibility this pregnancy may not succeed, is that right?

A. Yes, I did say it makes it very likely a pregnancy, it will not succeed.

Q. So based on that and the condition that you see here, you decide to have the patient come back to the clinic in one week; is that right? Do you see at the bottom?

# APPENDIX B

1

```
 1            IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
 2
       CHRISTINA ALFREY AND       : MEDICAL PROFESSIONAL
 3     JEFFREY FAY, INDIVIDUALLY   : LIABILITY
       AND AS ADMINISTRATORS OF    :
 4     THE ESTATE OF L.A.F.,       : JURY TRIAL DEMANDED
       DECEASED,                   :
 5                    PLAINTIFFS   : CIVIL: 3:21-CV-01629-JFS
                                   :
 6                      VS.        :
                                   :
 7     KARI A. WHITLEY, M.D.,      :
       LEHIGH VALLEY PHYSICIANS    :
 8     GROUPS AFFILIATED WITH THE  :
       LEHIGH VALLEY HEALTH NETWORK :
 9     T/A LVPG MATERNAL FETAL     :
       MEDICINE—MONTAGE, LEHIGH    :
10     VALLEY HEALTH NETWORK, INC., :
       UNITED STATES OF AMERICA AND :
11     WAYNE MEMORIAL HOSPITAL,    :
                       DEFENDANTS  :
12

13

14
                 REMOTE VIDEO DEPOSITION OF
15                JAMES W. PELLEGRINI, M.D.

16                 Monday, July 29, 2024

17                      4:59 p.m.

18        Bethann M. Rogers, RPR, Court Reporter
                    Notary Public
19
              Luz Cabrales, Videographer
20

21

22

23                 DEVINE DEPOSITIONS
```

11    BY MS. SHWED:

12        Q.    You see there, Doctor, it's listed --

13        A.    Yes.

14        Q.    -- Number 6 as your materials reviewed

15    deposition of Eric Rittenhouse.

16        A.    Thank you.

17        Q.    Sure.  And I'm going to show you a portion of

18    his deposition.

19            MS. SHWED:  Can you bring up for me,

20    please, Bates -- or, I'm sorry, D50, Page 150.

21            (Exhibit D50 produced for identification)

22            THE VIDEOGRAPHER:  Counsel, can we go off

23    the video record for a second?

24            MS. SHWED:  Sure.

25            THE VIDEOGRAPHER:  Off the video record

49

1    5:59.

2            (Discussion held off the record)

3            THE VIDEOGRAPHER:  Back on the video

4    record 6:03.

5    BY MS. SHWED:

6        Q.    I'm sorry, Doctor, we took a break so we

7    could do some technology things.  I just want to show

8    you an exhibit.  It's part of Dr. Eric Rittenhouse's

9    deposition, and I'm going to read it to you.  It's a

10   little long, so I apologize to you for it, but we'll

11   just -- we'll go through it, and I promise I'll read

12   slow.

13            It starts on Line 17, so you can read along

14   with me.  And this is questioning that I had of

15   Dr. Rittenhouse during his deposition.

16            I said, the other thing I just wanted to make

17   sure I understood there at the end of some of the

18   questioning by Attorney Selingo there was some reference

19   to your belief that this -- that there was a 23 week,

20   1 day time frame you were talking about.  And can you

21   just explain to me so I make sure I understand why it is

22   that you believe Miss Alfrey was 23 weeks and 1 day

23   versus what some of the records are reflecting as

24   23 weeks and 5 days?

25                 MS. SHWED:  And then can you go to the

50

1    next page, please.

2                 MR. SELINGO:  Objection.

3                    THE VIDEOGRAPHER:   Off the video record

4          6:04.

5                    MR. SELINGO:   So the objection to this is

6          it's expertise.   It's an opinion by Dr. Rittenhouse

7          after the fact, not at the time.   All of his records

8          indicate that he believed this baby was 23 weeks and

9          5 days in the hospital that morning.   During his

10         deposition I admit that he drew an opinion that he

11         believed this baby was 23 weeks and 1 day.

12                    But it was specifically stated in the

13         deposition transcript that Dr. Rittenhouse is not going

14         to be an expert at trial.   Certainly if he's going to be

15         an expert at trial, Tim -- or, Mr. Judge, please advise

16         us of that now, and we'll do his deposition prior to

17         trial.

18                    MR. JUDGE:   Dr. Rittenhouse will not be

19         an expert at trial.

20                    MR. SELINGO:   Thank you.

21                    MS. SHWED:   Were you done with your

22         objection?

23                    MR. SELINGO:   Well, yeah.   I'm not even

24         going to let him answer this, Amy.   You're going to have

25         to get the judge on the line for this one.

1                    MS. SHWED:  Well, I don't think you can

2    instruct him not to, and I'm not getting a judge at

3    6:00.  So we're videotaping it.  Your objection is

4    preserved.  And if the judge says that this is not

5    appropriate for me to ask him, it can certainly be

6    removed from the video and the transcript.

7                    And just to -- for the record to address

8    your specific objection, Dr. Rittenhouse is not an

9    expert.  He's not going to opine to a reasonable degree

10   of medical certainty whether someone breached the

11   standard of care.  Dr. Rittenhouse is -- was the

12   treating obstetrics physician who based on his testimony

13   drew a conclusion from a six-week ultrasound that he

14   reviewed and took a measurement of the crown-rump length

15   which is part of his testimony, and based on that

16   information that he has as a treating physician, not as

17   an expert, he believed the baby was 23 weeks and 1 day.

18   So I think that -- let me just put it on the record, and

19   you can do your thing.

20                   MR. SELINGO:  I wasn't interrupting you.

21                   MS. SHWED:  No, I know.  I thought you

22   were.  That's why I said just let me finish.  I think

23   that he is capable -- I am capable of putting up the

24  ultrasound from six weeks and asking him based on that

25  ultrasound and something known as the crown-rump length

52

1  what gestational age the baby was when he was treating

2  him.  So I think it's appropriate to get into.

3              And, again, I don't know that you can

4  instruct him not to answer.  I'm never getting a judge

5  at 6:06 p.m. on a Monday, and so there's no prejudice to

6  you.  If the judge rules in your favor, it can be

7  removed from the transcript.

8              MR. SELINGO:  So, Amy, if you could show

9  me a document where Dr. Rittenhouse said at the time of

10  treatment that this baby was 23 weeks and 1 day, I will

11  agree with you.  But, otherwise, what he has done is

12  drew an opinion at the time of his deposition as to the

13  gestational age of this baby which is an expert opinion.

14  I know it's not standard of care, but that's not the

15  only expert opinions we do.  Right here we're talking

16  about causation which is an expert opinion, so it

17  doesn't have to be standard of care.

18              Tim Judge who is counsel for

19  Dr. Rittenhouse through the USA has just clearly told

20    you Dr. Rittenhouse is not going to be an expert at

21    trial.  That opinion will be excluded at trial.  So now

22    you're trying to put evidence in front of Dr. Pellegrini

23    that will not be admitted at the time of trial.  You're

24    just wasting our time at this point.  It's after

25    6:00 p.m. on a Monday evening.

53

1                    MS. SHWED:  Yeah, Dave, and we started at

2    5:00 to start it for your client's convenience.  So

3    regardless of when I did it, I wouldn't have been able

4    to get a judge to do it now.  They're not open at 5:00.

5                    MR. SELINGO:  Do you agree there's no

6    document that shows this baby was 23 weeks and 1 day

7    according to Dr. Rittenhouse?

8                    MS. SHWED:  No, because I think the

9    ultrasound shows the crown-rump measurement.  I don't --

10                   MR. SELINGO:  Where is the document at

11   the time, Ms. Shwed?

12                   MS. SHWED:  That's what I'm talking

13   about.

14                   MR. SELINGO:  Where is the document?

15   There is no document.

16          MS. SHWED:  Dave, we can argue this till
17   we're blue in the face.  It's a video.  The judge will
18   decide whether the jury gets to see it or not.  You
19   preserved -- I understand your objection, but I don't
20   think you're in a position to tell him -- instruct him
21   not to answer.  And with all due respect to Tim, I don't
22   think he is either.  Now, if you object at the time of
23   trial that Dr. Rittenhouse can't testify to this, then
24   it's excluded.  What is your prejudice for him answering
25   it today?

54

1          MR. SELINGO:  Well, it's facts not in
2   evidence.  It's very clear that it's facts not in --
3          MS. SHWED:  If the judge rules in your
4   favor, it can be eliminated so that the jury never hears
5   it.
6          MR. SELINGO:  There are no other experts
7   that are going to testify to that.  So even if you ask
8   it as a hypothetical which is probably the only way you
9   could possibly try to get it in, you're not going to
10   have somebody testify to that fact at the time of trial.
11   So I don't know --

12          MS. SHWED:   We can agree to disagree on

13    that.   But my point to you is there's no jury here.

14    This will be preserved.   And then if the judge says Dave

15    is absolutely right and none of this should come in,

16    it's easily removed from the transcript and the video.

17    The jury does not get to hear it.

18          MR. SELINGO:   Amy, I just thought that

19    you had more experience than this that you wouldn't go

20    into something like this.   Fine, we'll do it, all right,

21    to satisfy you and your I guess query as to what would

22    happen.   We can all go on the website.   It's available

23    on your computer.   You can do that yourself if you

24    wanted to.   But if you want him to go through it, I

25    don't think he has the website up, and he probably has

55

1    not even looked at it, but we'll do it, all right?

2          MS. SHWED:   Yep.

3          THE VIDEOGRAPHER:   Back on the video

4    record 6:10.

5    BY MS. SHWED:

6      Q.    I'm just going to continue reading, Doctor,

7    on Page 151.